## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE THE APPLICATION OF
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS FOR ACCESS
TO CERTAIN SEALED COURT
RECORDS

1156 15th Street NW
Suite 1250
Washington, D.C. 20005

Case: 1:16-mc-02183
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 10/21/2016
Description: Misc.

Related to:
Criminal No. 1:10-cr-00225-CKK

**Oral Argument Requested**

## APPLICATION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS

1.      Pursuant to Local Criminal Rule 57.6, the Reporters Committee for Freedom of

the Press (the "Reporters Committee" or "Applicant") respectfully moves this Court for an Order

unsealing certain court records related to the United States government's completed criminal

investigation and prosecution of Stephen Jin-Woo Kim ("Kim"), Criminal No. 1:10-cr-00225-

CKK (the "Kim Prosecution").  Specifically, the Reporters Committee seeks to unseal any and

all applications and supporting documents, including affidavits, seeking any of the following,

any court orders granting or denying any of the following, and any other court records related to

the following, such as returns, motions to seal, miscellaneous dockets and docket entries, that

relate to the Kim Prosecution:

(a) any search warrant, regardless of whether the warrant was issued or executed, and

including warrants under the Stored Communications Act ("SCA"), *see* 18 U.S.C. §§

2703, (collectively, the "Search Warrant Materials");

(b) authorization for the use of any pen register or trap and trace device pursuant to 18

U.S.C. §§ 3121–3127, regardless of whether such authorization was granted or a pen

register or trap and trace device was used (collectively, the "PR/TT Materials"); and

(c) any order pursuant to 18 U.S.C. § 2703(d) of the SCA, regardless of whether or not

the order was issued or executed (collectively, the "Section 2703(d) Materials").

## INTEREST OF THE APPLICANTS

2.      The Reporters Committee is an unincorporated nonprofit association of reporters

and editors dedicated to safeguarding the First Amendment rights and freedom of information

interests of the news media and the public.  The Reporters Committee has participated as a party

and as *amicus curiae* in First Amendment and freedom of information litigation since 1970.  The

Reporters Committee frequently represents the interests of the press and the public in court cases

involving access to judicial proceedings and court records.

3.      The Reporters Committee, like all members of the public and the press, has a

strong interest in observing and understanding the consideration and disposition of matters by

federal district courts.  That interest is heightened when the federal government is a party.

4.      The public and the press also have a powerful interest in obtaining access to court

documents concerning judicial authorization for the use of law enforcement tools that allow the

government to collect or otherwise obtain electronic communications and/or electronic

communications records.  Where the government obtains a search warrant allowing it to collect

or obtain such information, and especially where—as in the case of orders pursuant to 18 U.S.C.

§ 2703(d) of the SCA and orders authorizing the use of pen register and trap and trace devices—

no warrant is required for the government to collect or obtain such information, judicial

oversight and, in turn, public oversight of the judicial process, is necessary to guard against government overreach.

5.      In addition, the public and the press have a particularly strong interest in access to court records related to the government's prosecution of Kim, a former State Department contractor who, in 2014, pled guilty to the unauthorized disclosure of national defense information to journalist James Rosen ("Rosen") of Fox News.

## STATEMENT OF FACTS

6.      Applicant is informed and believes that Kim is a former Senior Advisor in the State Department who held a top secret security clearance. *See* Statement of Offense, *United States v. Kim*, No. 1:10-cr-00225-CKK ("*Kim*") at 1–2 (D.D.C. filed Feb. 7, 2014), ECF No. 273. In June 2009, Kim worked in the Bureau of Verification, Compliance, and Implementation, which oversaw various aspects of international agreements related to arms control, nonproliferation, and disarmament. *Id.*

7.      On or about June 11, 2009, Fox News published an article by Rosen on its website, foxnews.com, entitled "North Korea Intends to Match U.N. Resolution with New Nuclear Test" (the "Rosen Article"). Statement of Offense at 3; Memorandum Opinion, *Kim* at 3 (D.D.C. filed July 24, 2013), ECF No. 133. The Rosen Article stated that U.S. intelligence officials believed that North Korea planned to respond to a United Nations Security Council resolution by conducting additional nuclear tests, among other actions. *See* James Rosen, *North Korean Intends to Match U.N. Resolution with New Nuclear Test*, Fox News, June 11, 2009, at http://www.foxnews.com/politics/2009/06/11/north-korea-intends-match-resolution-new-nuclear-test.html.

3

8.      Applicant is informed and believes that individuals within the government concluded that the Rosen Article included national defense information that had been classified as "Top Secret/Special Compartmented Information" ("TS/SCI").  *See* Application for Search Warrant, Exhibit 1, *Application for E-Mail Account [redacted] Maintained on Computer Servers Operated by Google, Inc., Headquartered at 1600 Amphitheatre Parkway, Mountain View, CA*, No. 1:10-mj-00291-AK at 7 (D.D.C. filed Nov. 7, 2011), ECF No. 20-1 ("Rosen Search Warrant Affidavit").  Following its publication, the FBI began an investigation to determine the source of the information contained in the Rosen Article.  *Id.*  The FBI determined that information reflected in the Rosen Article was first made available in an intelligence report disseminated on June 11, 2009 to certain individuals, including Kim.  *Id.* at 7–8.

9.      On or about November 9, 2009, the government obtained two search warrants to search two Yahoo! email accounts used by Kim (collectively, the "Kim Yahoo! Search Warrants").  Order, *Application for Search Warrant for Email Account [redacted] Maintained on Computer Servers Operated by Yahoo!, Inc. Headquartered at 701 First Avenue, Sunnyvale, CA*, No. 1:09-mj-00616-AK at Exhibit E (D.D.C. May 23, 2013), ECF No. 11 ("First May 2013 Unsealing Order"); Order, *Application for Search Warrant for Email Account [redacted] Maintained on Computer Servers Operated by Yahoo!, Inc. Headquartered at 701 First Avenue, Sunnyvale, CA*, No. 1:09-mj-00619-AK at Exhibit E (D.D.C. May 23, 2013), ECF No. 10 ("Second May 2013 Unsealing Order").  Upon the government's motion, both search warrants and all attachments thereto, the applications for the search warrants, the affidavits in support of the search warrants, the memoranda in support thereof, the subsequent returns of the search warrants, and the government's motions to seal and proposed orders were filed under seal.  First May 2013 Unsealing Order, Exhibit C; Second May 2013 Unsealing Order, Exhibit C.

10.     On or about May 28, 2010, the government obtained a search warrant under the

SCA to search a Google Mail ("Gmail") account (the "Rosen Gmail Search Warrant").

Application for Search Warrant, Exhibit 3, *Application for E-Mail Account [redacted]*

*Maintained on Computer Servers Operated by Google, Inc., Headquartered at 1600*

*Amphitheatre Parkway, Mountain View, CA*, No. 1:10-mj-00291-AK (D.D.C. filed Nov. 7,

2011), ECF No. 20-3.  The application for that search warrant stated that the target Gmail

account was one used by "a national news reporter" who was later revealed to the public to be

Rosen.  *See* Rosen Gmail Search Warrant Affidavit at 2.  Upon the government's motion, the

search warrant and all attachments thereto, the application for the search warrant, the affidavit in

support of the search warrant, the memorandum in support thereof, the subsequent return of the

search warrant, and the government's motion to seal and proposed order were filed under seal.

Order, *Application for E-Mail Account [redacted] Maintained on Computer Servers Operated by*

*Google, Inc., Headquartered at 1600 Amphitheatre Parkway, Mountain View, CA*, No. 1:10-mj-

00291-AK at Exhibit C (D.D.C. May 23, 2013), ECF No. 24 ("Third May 2013 Unsealing

Order").

11.     On or about August 19, 2010, Kim was indicted in this Court on charges of

unauthorized disclosure of national defense information in violation of 18 U.S.C. § 793(d) for

allegedly providing TS/SCI information to Rosen and making false statements in violation of 18

U.S.C. § 1001(a)(2) for having denied contact with Rosen in an interview with the FBI.  *See*

Indictment, *Kim* at 1-2 (D.D.C. filed Aug. 19, 2010), ECF No. 3.

12.     Applicant is informed and believes that, following Kim's indictment, the parties

engaged in discovery.  Following an October 11, 2010 status hearing before the Court with

respect to outstanding discovery issues, the government filed with the Court certain

5

correspondence, including two letters dated October 15, 2010 and October 29, 2010 from the

government to Kim's counsel regarding the government's first and second production of

unclassified discovery, respectively.  Notice of Filing, Exhibit 2 and Exhibit 3, *Kim* (D.D.C. filed

Oct. 13, 2011), ECF No. 58-2, 58-3.  True and correct copies of the October 10, 2010 letter and

the October 29, 2010 letter are attached hereto as Exhibits 1 and 2, respectively.  The letters list

items produced by the government to Kim's counsel, including certain records related to Internet

subscriptions, email accounts, phone numbers, and IP addresses, as well as emails recovered

from specified email accounts, "[p]en register and trap trace order results" for specified

telephone numbers and email addresses, and "18 U.S.C. §2703(d) order results" for specified

email addresses, among other items.  *See* Exhibits 1 and 2.

     13.    In or around November 2011, the government moved to unseal the Kim Yahoo!

Search Warrants, the Rosen Gmail Search Warrant, and certain related materials.  *See* First May

2013 Unsealing Order, Exhibit F; Second May 2013 Unsealing Order, Exhibit F; Third May

2013 Unsealing Order, Exhibit R.  On or about November 7, 2011, the Court granted the

government's motions to unseal and entered three orders requiring that redacted versions of the

Kim Yahoo! Search Warrants and Rosen Gmail Search Warrant, as well as the related

applications, supporting affidavits, and attachments thereto be placed on the public docket.  First

May 2013 Unsealing Order, Exhibit G; Second May 2013 Unsealing Order, Exhibit G; Third

May 2013 Unsealing Order, Exhibit S.

     14.    Applicant is informed and believes, however, that as a result of an administrative

error in the Clerk's office those materials ordered to be unsealed by the Court in November of

2011 were not placed on the public docket until in or around May of 2013.  Memorandum and

Order at 2-3, *Application for Search Warrant for E-Mail Account [redacted] Maintained on*

*Computer Servers Operated by Google, Inc., Headquartered at 1600 Amphitheatre Parkway, Mountain View, CA,* No. 1:10-mj-00291-AK (filed May 23, 2013), ECF No. 25, *Application for Search Warrant for E-Mail Account [redacted] Maintained on Computer Servers Operated by Yahoo!,, Inc., Headquartered at 701 First Avenue, Sunnyvale, CA,* No. 1:09-mj-00616-AK (filed May 23, 2013), ECF No. 12, *Application for Search Warrant for E-Mail Account [redacted] Maintained on Computer Servers Operated by Yahoo!,, Inc., Headquartered at 701 First Avenue, Sunnyvale, CA,* , No. 1:09-mj-00619-AK (filed May 23, 2013), ECF No. 11.

15.     Also in May of 2013, in response to further motions to unseal filed by the government, the Court unsealed "all remaining miscellaneous materials" related to the Kim Yahoo! Search Warrants and the Rosen Gmail Search Warrant. *See* First May 2013 Unsealing Order; Second May 2013 Unsealing Order; Third May 2013 Unsealing Order.

16.     In or around February of 2014, the government and Kim entered into a plea agreement pursuant to which Kim pled guilty to the unauthorized disclosure of national defense information in violation of 18 U.S.C. § 793(d). *See* Plea Agreement, *Kim* (D.D.C. filed Feb. 7, 2014), ECF No. 274.

17.     On or about April 2, 2014, the Court accepted Kim's guilty plea, sentenced him to thirteen months of imprisonment and twelve months of supervised release, and ordered him to pay a $100 assessment. Amended Judgment, *Kim* (D.D.C. filed Apr. 8, 2014), ECF No. 291. The second count of the indictment charging Kim with making false statements in violation of 18 U.S.C. § 1001(a)(2) was dismissed on the government's motion. *Id.*

18.     The filed discovery correspondence between the government and Kim indicates that a number of search warrants, orders authorizing the use of pen registers and/or trap and trace devices, and orders pursuant to 18 U.S.C. §2703(d) were obtained in connection with the Kim

Prosecution. *See* Exhibits 1 and 2. To Applicant's knowledge, however, only the Kim Yahoo! Search Warrants, the Rosen Gmail Search Warrant, and records related to those warrants have been unsealed and placed on the public docket.

19.     As explained more fully in the accompanying Memorandum of Points and Authorities, the press and the public have a right of access to these judicial records under both the First Amendment and common law. No compelling government interest justifies the continued sealing of such records concerning the Kim Prosecution, particularly now that the government's investigation and prosecution of Kim has concluded.

## REQUEST FOR RELIEF

20.     The Reporters Committee seeks an Order unsealing any and all Search Warrant Materials relating to the Kim Prosecution. Upon information and belief, each search warrant application subject to this Application was assigned a unique docket number, but no listing of these docket numbers is publicly available. Accordingly, in addition to seeking unsealing of the relevant dockets, and to facilitate the Court's resolution of this Application, the Reporters Committee also requests that the United States Attorney be directed to provide a list of the docket numbers associated with the Search Warrant Materials that fall within the scope of this Application.

21.     The Reporters Committee also seeks an Order unsealing any and all PR/TT Materials relating to the Kim Prosecution. Upon information and belief, each application for an order authorizing the use of a pen register or trap and trace device subject to this Application was assigned a unique docket number, but no listing of these docket numbers is publicly available. Accordingly, in addition to seeking unsealing of the relevant dockets, and to facilitate the Court's resolution of this Application, the Reporters Committee also requests that the United States

Attorney be directed to provide a list of the docket numbers associated with the PR/TT Materials that fall within the scope of this Application.

22.    The Reporters Committee seeks as well an Order unsealing any and all Section 2703(d) Materials relating to the Kim Prosecution.  Upon information and belief, each application for an order pursuant to 18 U.S.C. § 2703(d) subject to this Application was assigned a unique docket number, but no listing of these docket numbers is publicly available. Accordingly, in addition to seeking unsealing of the relevant dockets, and to facilitate the Court's resolution of this Application, the Reporters Committee also requests that the United States Attorney be directed to provide a list of the docket numbers associated with the Section 2703(d) Materials that fall within the scope of this Application.

23.    The Reporters Committee seeks any further relief that the Court deems just and proper.

## ORAL ARGUMENT REQUESTED

24.    The Reporters Committee respectfully requests oral argument.

Dated:  October 21, 2016                          Respectfully submitted,


                                                  /s/ Katie Townsend
                                                  Katie Townsend
                                                  DC Bar No. 1026115
                                                  Bruce Brown
                                                  DC Bar No. 457317
                                                  THE REPORTERS COMMITTEE FOR
                                                  FREEDOM OF THE PRESS
                                                  1156 15th St. NW, Suite 1250
                                                  Washington, DC 20005
                                                  Phone: 202.795.9300
                                                  Facsimile: 202.795.9310
                                                  ktownsend@rcfp.org
                                                  bbrown@rcfp.org
                                                  Counsel for Applicant the Reporters
                                                  Committee for Freedom of the Press

## CERTICATE OF SERVICE

I hereby certify that this 21st day of October, 2016, I have served a copy of the foregoing **Application for Public Access to Certain Sealed Court Records** as well at the Memorandum of Points and Authorities and Proposed Order by Certified Mail on:

Abbe David Lowell
Keith M. Rosen
Scott William Coyle
CHADBOURNE & PARKE LLP
1200 New Hampshire Avenue, NW
Suite 300
Washington, DC 20036
*ATTORNEYS TO BE NOTICED*
*Counsel for Defendant Stephen Jin-Woo Kim*

Deborah A. Curtis
U.S. DEPARTMENT OF JUSTICE
NSD Counterespionage Section
600 E. Street, 10th Floor
Washington, DC 20004
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Assistant U.S. Attorney*

Jonathan Martin Malis
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Room 5-5842
Washington, DC 20530
*ATTORNEY TO BE NOTICED*
*Assistant U.S. Attorney*

Katie Townsend
D.C. Bar No. 1026115
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel for Applicant the Reporters*
*Committee for Freedom of the Press*

# EXHIBIT 1



U.S. Department of Justice

Ronald C. Machen Jr.
United States Attorney

*District of Columbia*

*Judiciary Center
555 Fourth St., N.W.
Washington, D.C.  20530*

October 15, 2010

**VIA E-MAIL AND FEDEX (with attachments)**

Abbe D. Lowell, Esq.
McDermott, Will & Emery, LLP
600 Thirteenth St., NW
Washington, D.C. 20005-3096
202-756-8001

Ruth Wedgwood, Esq.
1619 Massachusetts Ave., NW
Washington, D.C. 20036
202-663-5618

### Re: <u>United States v. Stephen Jin-Woo Kim</u>, Crim. No. 10-255 (CKK)

Dear Mr. Lowell and Ms. Wedgwood,

      To assist you in preparing for trial in this case, and pursuant to your request for Rule 16 discovery, enclosed please find one disk labeled "U.S. v. Stephen Kim,  Discovery Disc # 1, US-0000001 to US-0002111," containing the Government's first production of unclassified discovery in the above-captioned matter.[1]  We anticipate producing additional unclassified discovery to you on a rolling basis and will get those materials to you as soon as they become available.

---

     [1]As mentioned orally at your client's initial appearance on August 27, 2010, we note here that prior to the indictment of your client and his arraignment in this case, the Government shared and reviewed with you substantial classified and unclassified documents and information.

**CONTENTS SUBJECT TO PROTECTIVE ORDER
ISSUED BY U.S. DISTRICT COURT ON OCTOBER 13, 2010**    -1-

**I.**    **Unclassified Documents and Videos**

To assist you in your review of the enclosed documents and items, we assigned Bates numbers to them and provide the following index:

1.    Federal Reserve Bank of New York records  (US-0000001 to US-0000234);

2.    Hanmi Bank records  (US-0000235 to US-0000248);

3.    JP Morgan Chase Bank records  (US-0000249 to US-0000502);

4.    Department of State (DoS) Federal Credit Union records  (US-0000503 to US-0000631);

5.    American Express records  (US-0000632 to US-0000946);

6.    Comcast subscriber and call detail records for (202) 506-████ (US-0000947 to US-0001007);

7.    Comcast Internet subscriber records for Stephen Kim  (US-0001008)

8.    Yahoo! subscriber and IP address records for ████████@yahoo.com  (US-0001009 to US-0001114);

9.    Yahoo! subscriber and IP address records for ████████@yahoo.com  (US-0001115 to US-0001119);

10.    Google subscriber and IP address records for ████@gmail.com  (US-0001120 to US-0001121);

11.    AT&T subscriber and call detail records for (202) 777-████ (US-0001122 to US-0001125);

12.    AT&T subscriber records for (212) 601-████ (US-0001126);

13.    AT&T Wireless subscriber records for (202) 549-████ (US-0001127 to US-0001128);

14.    AT&T Wireless subscriber and call detail records for (202) 549-████ (US-0001129 to US-0001137);

15.    AT&T Wireless subscriber records for (202) 615-████ (US-0001138 to US-0001139);

16.    AT&T Wireless subscriber and call detail records for (202) 213-████ (US-0001140 to

**CONTENTS SUBJECT TO PROTECTIVE ORDER**
**ISSUED BY U.S. DISTRICT COURT ON OCTOBER 13, 2010**          -2-

US-0001155);

17. TracFone subscriber records for (202) 213-█████ (US-0001156 to US-0001159);

18. T-Mobile subscriber and call detail records for (703) 342-█████ (US-0001160 to US-0001219);

19. Security video from the American Red Cross (US-0001220 to US-0001222);

20. Verizon subscriber records for (202) 824-█████, (202) 861-█████, and (202) 861-█████ (US-0001223 to US-0001224);

21. Verizon subscriber and call detail records for (703) 883-█████ (US-0001225 to US-0001230);

22. Verizon IP address records for 71.163 ██████ (US-0001231);

23. Verizon call detail records for (202) 824-█████, (202) 861-█████, and (202) 861-█████ (US-0001232 to US-0001239);

24. Verizon subscriber records for the following phone numbers:

        a.    (202) 293-█
        b.    (202) 728-█
        c.    (202) 824-█
        d.    (202) 456-█
        e.    (202) 456-█
        f.    (202) 824-█
        g.    (202) 824-█
        h.    (202) 824-█
        i.    (202) 824-█
        j.    (202) 547-█
        k.    (202) 647-█
        l.    (202) 647-█
        m.    (718) 720-█
        n.    (703) 979-█
        o.    (202) 628-█

(US-0001240 to US-0001248);

25. Verizon Wireless subscriber and call detail records for (202) 577-█████ (US-0001249 to US-0001430);

**CONTENTS SUBJECT TO PROTECTIVE ORDER
ISSUED BY U.S. DISTRICT COURT ON OCTOBER 13, 2010**

26.   Verizon Wireless subscriber records for (202) 329-███  (US-0001431 to US-0001432);

27.   Verizon Wireless subscriber records for (703) 472-███  (US-0001433 to US-0001434);

28.   Passport applications for Stephen Kim  (US-0001435 to US-0001437);

29.   Security banner for Stephen Kim's Unclassified and SECRET DoS computer systems (US-0001438);

30.   Security banner for Stephen Kim's TOP SECRET DoS computer system  (US-0001439);

31.   DoS Bureau of Verification, Compliance and Implementation rotation duty rosters (US-0001440 to US-0001447);

32.   Security briefing forms for Stephen Kim  (US-0001448 to US-0001480);

33.   Security debriefing forms for Stephen Kim  (US-0001481 to US-0001482);

34.   Acknowledgment for Acceptable Use of Government-Issued Personal Digital Assistants (PDAs) for Stephen Kim  (US-0001483 to US-0001484);

35.   Personal Custody Property Receipt for Stephen Kim  (US-0001485);

36.   COMSEC Material Report form for Stephen Kim  (US-0001486);

37.   DoS badge records for Stephen Kim  (US-0001487 to US-0001579);

38.   DoS badge records  (US-0001580 to US-0001582);

39.   DoS call detail records for (202) 316-███  (US-0001583 to US-0001609);

40.   Computer screen shots of Stephen Kim's unclassified DoS computer system (US-0001610 to US-0001625);

41.   Excerpts from the DoS Foreign Affairs Manual (FAM)  (US-0001626 to US-0001946);

42.   Paperwork regarding Sony Vaio computer  (US-0001947 to US-0001950);

43.   Paperwork regarding Apple computer  (US-0001951 to US-0001953);

44.   Video surveillance camera screen shots and badge records  (US-0001954 to US-0001956);

**CONTENTS SUBJECT TO PROTECTIVE ORDER
ISSUED BY U.S. DISTRICT COURT ON OCTOBER 13, 2010**          -4-

45.  DoS call detail records for (202) 647-███ (US-0001957 to US-0001975);

46.  DoS video from 9/15/09 and associated badge records (US-0001976 to US-0001977);

47.  DoS video from 9/15/09 - 9/16/09 and associated badge records (US-0001978 to US-0001979);

48.  DoS video from 9/18/09 and associated badge records (US-0001980 to US-0001982);

49.  DoS video from 9/24/09 - 9/25/09 and associated badge records (US-0001983 to US-0001984);

50.  Classified Information Non-disclosure Statement (US-0001985);

51.  Consent to Search (US-0001986 to US0001987);

52.  Emails recovered from Stephen Kim's DoS unclassified computer (US-0001988 to US-0001998);

53.  Emails recovered from ████████████@gmail.com account (US-0001999 to US-0002012);

54.  Screenshots of emails from Stephen Kim's DoS unclassified computer (US-0002013 to US-0002030);

55.  Emails and records recovered from ██████████@yahoo.com and ██████████@yahoo.com accounts (US-0002031 to US-0002108);

56.  DoS floor plans (US-0002109 to US-0002111).

Prior to the production to the prosecution team of the emails recovered from the ██████████@yahoo.com and ██████████@yahoo.com accounts (US-0002031 to US-0002108), those emails were reviewed for potentially-privileged material by a Federal Bureau of Investigation (FBI) Special Agent and an Assistant United States Attorney (AUSA) with no involvement in the criminal investigation and prosecution of your client. If you have any questions concerning the privilege review, please contact AUSA John Borchert at (202) 353-2442.

## II.  Unclassified Hard Drives

We have also enclosed one 1 TB hard drive and one 500 GB hard drive with duplicate images of your client's Sony and Apple computer hard drives which he provided to the FBI on

March 29, 2010.  We are also in possession of three separate images of your client's unclassified DoS hard drive as of August 31, 2009, September 22, 2009, and September 30, 2009, respectively.  Please provide us with three 80 GB hard drives, and we will have those three images duplicated and produced to you when they have been scrubbed for classified information. We are also in possession of your client's unclassified Department of Energy (DoE) computer. We will have an image made of that computer and produce it to you when the DoE computer has been scrubbed for classified information.

### III.     Defendant's Rule 16 Statements

The Government provides notice to you of any statements made by your client contained in the attached discovery materials.  Further, FBI Form 302s of your client's statements to the FBI on September 24, 2009 and March 29, 2010, respectively, will be provided to you in classified discovery.

### IV.     Expert Witnesses/Reports of Examinations and Tests

The Government has not yet determined which, if any, expert witnesses it may call at trial.  When the Government has done so, it will so inform the defense and comply with its obligations under Rule 16(a)(1)(G).

### V.     Criminal Record

The Government is unaware of any prior convictions for your client.

### VI.     Classified Discovery

As we have discussed, the Government is also preparing for your review of classified discovery.  Once other defense counsel have obtained the necessary clearances, and you are prepared to review the classified materials in an approved SCIF, we can arrange for your inspection of those materials on a rolling basis as they become available for production.

**CONTENTS SUBJECT TO PROTECTIVE ORDER
ISSUED BY U.S. DISTRICT COURT ON OCTOBER 13, 2010**

**VII.    Reciprocal Discovery Demands**

      The United States formally requests full reciprocal discovery pursuant to Fed. R. Crim. P. 16(b), including but not limited to the disclosure of any documents, photos, tangible objects, and reports of examinations or tests you intend to use at trial.

      Should you have any questions, please contact us.

                    Very truly yours,

                    RONALD C. MACHEN JR.
                    UNITED STATES ATTORNEY

                    G. MICHAEL HARVEY
                    Assistant United States Attorney
                    (202) 305-4155

                    JONATHAN M. MALIS
                    Assistant United States Attorney
                    (202) 305-9665

                    PATRICK MURPHY
                    Trial Attorney
                    U.S. Department of Justice
                    (202) 305-7003

Enclosures

CONTENTS SUBJECT TO PROTECTIVE ORDER
ISSUED BY U.S. DISTRICT COURT ON OCTOBER 13, 2010

# EXHIBIT 2



U.S. Department of Justice

Ronald C. Machen Jr.
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

October 29, 2010

**VIA E-MAIL AND FEDEX (with attachments)**

Abbe D. Lowell, Esq.
McDermott, Will & Emery, LLP
600 Thirteenth St., NW
Washington, D.C. 20005-3096

Ruth Wedgwood, Esq.
1619 Massachusetts Ave., NW
Washington, D.C. 20036

Re:  **United States v. Stephen Jin-Woo Kim**, Crim. No. 10-255 (CKK)

Dear Mr. Lowell and Ms. Wedgwood,

  To assist you in preparing for trial in this case, and pursuant to your request for Rule 16 discovery, enclosed please find a disc labeled "U.S. v. Stephen Jin Kim, Discovery Disc # 2, US-0002112 to US-0014567," containing the following items representing the Government's second production of unclassified discovery in the above-captioned matter:

**I.**  **Unclassified Documents**

1.  Pen register and trap trace order results for (202) 577-███ (US-0002112 to US-0005253);

2.  Pen register and trap trace order results for (703) 342-███ (US-0005254 to US-0006335);

3.  Pen register and trap trace order results for (703) 883-███ (US-0006336 to US-0006818);

4.  Pen register and trap trace order results for ███@gmail.com (US-0006819 to US-0006821);

5.    Pen register and trap trace order results for ███████@yahoo.com  (US-0006822 to US-0006824);

6.    Pen register and trap trace order results for ███████@yahoo.com  (US-0006825 to US-0009402);

7.    18 U.S.C. §2703(d) order results for ███████@gmail.com  (US-0009403 to US-0009470);

8.    18 U.S.C. §2703(d) order results for ███████@yahoo.com  (US-0009471 to US-0014532);

9.    Copy of Stephen Kim's passport  (US-0014533 to US-0014548); and

10.   Department of State (DoS) badge records  (US-0014549 to US-0014567).

**II.    Electronic Media**

We have also enclosed the following additional electronic media:

1.    A 250 GB hard drive marked "U.S. v. Stephen Jin Kim, Three DoS Open Net Workstation Images, (US-0014568)," which contains three separate images of your client's DoS Open Net workstation computer taken as of August 31, 2009, September 22, 2009, and September 30, 2009; and

2.    Three discs entitled "U.S. v. Stephen Jin Kim, Discovery Disc #3, US-0014569," "U.S. v. Stephen Jin Kim, Discovery Disc #4, US-0014570," and "U.S. v. Stephen Jin Kim, Discovery Disc #5, US-0014571," which contain copies of your client's DoS Open Net workstation email.

The Government used keyword searches to attempt to identify classified information on this electronic media. Those searches did not reveal any classified information. Keyword searching for classified information on electronic media has its limitations; nevertheless, processing classified information on the DoS Open Net system was prohibited. Because the keyword searches did not identify any such classified information, and because a byte-by-byte review of the voluminous data on this electronic media was impractical, we are providing this electronic media to you in unclassified discovery pursuant to the Rule 16 protective order entered in this case. We reserve the right to protect any classified information that may later be identified on this electronic media under the Classified Information Procedures Act protective order.

Should you have any questions, please contact us.

Very truly yours,

RONALD C. MACHEN JR.
United States Attorney

G. MICHAEL HARVEY
Assistant United States Attorney
(202) 305-4155

JONATHAN M. MALIS
Assistant United States Attorney
(202) 305-9665

PATRICK MURPHY
Trial Attorney
U.S. Department of Justice
(202) 305-7003

Enclosures

3

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN RE THE APPLICATION OF
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS FOR ACCESS
TO CERTAIN SEALED COURT
RECORDS**

Case: 1:16–mc–02183
Assigned To : Kollar–Kotelly, Colleen
Assign. Date : 10/21/2016
Description: Misc.

Related to:
Criminal No. 1:10-cr-00225-CKK

**<u>Oral Argument Requested</u>**

## MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF THE APPLICATION OF THE REPORTERS COMMITTEE FOR
### FREEDOM OF THE PRESS FOR PUBLIC ACCESS TO CERTAIN SEALED COURT
### RECORDS

Katie Townsend
D.C. Bar No. 1026115
Bruce D. Brown
D.C. Bar No. 457317
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
bbrown@rcfp.org
ktownsend@rcfp.org

*Counsel for the Reporters Committee for
Freedom of the Press*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND............................................................................................... 2

1.  The Kim Prosecution has been the subject of ongoing public interest. ..................... 2

2.  Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials Related to the Kim Prosecution Remain Under Seal. ........................................................................ 5

ARGUMENT ..................................................................................................................... 7

I.   The press and the public have a powerful interest in access to the Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials still under seal that relate to the Kim Prosecution.................................................................................................................. 7

II.  The press and the public have both a constitutional and common law right to access the sealed Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials. .................... 9

    A.   The First Amendment and common law rights of access apply to the Search Warrant Materials. .................................................................................................................... 10

    B.   The First Amendment and common law rights of access apply to the Section 2703(d) and PR/TT Materials........................................................................................................... 13

III.  The Government cannot meet its burden to overcome the presumption of access to the Search Warrant Materials, the PR/TT Materials, and the Section 2703(d) Materials. ................. 17

    A.   The government cannot demonstrate a compelling interest that justifies the continued sealing of the Search Warrant Materials, the PR/TT Materials, and the Section 2703(d) Materials. .................................................................................................................... 18

    B.   The government cannot overcome the presumption in favor of disclosure of the Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials at issue here under the common law.................................................................................................................. 18

CONCLUSION................................................................................................................. 21

## TABLE OF AUTHORITIES

**CASES**

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989)........................................................ 15, 17

*CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 765 F.2d 823 (9th Cir. 1985)........... 12

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ....................................................... 13

*F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987)............................................. 12

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)................................................. 13

*\*In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp.

    2d. 83 (D.D.C. 2008) ...........................................................................................*passim*

*In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d

    283 (4th Cir. 2013) ......................................................................................... 19, 20, 21

*In re Application of WP Co. LLC for Access to Certain Sealed Court Records*, No. 16-mc-351

    (BAH), 2016 WL 1604976 (D.D.C. April 1, 2016)........................................................ 14, 22

*In re EyeCare Physicians of America*, 100 F.3d 514 (7th Cir. 1996).......................................... 16

*In re Newsday, Inc.,* 895 F.2d 74 (2d Cir. 1990) ........................................................ 16

*In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325 (D.C. Cir. 1985) .................... 13

*In re Sealing & Non-Disclosure of Pen/Trap/2703(D) Orders*, 562 F. Supp. 2d 876 (S.D. Tex.

    2008) ......................................................................................................... 20

*In re Search of Fair Finance*, 692 F.3d 424 (6th Cir. 2012) ......................................................... 16

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988)

    ......................................................................................................... 15, 16, 19

*In re Search Warrants Issued on May 21, 1987*, Misc. No. 87-186 (JHG), 1990 WL 113874

    (D.D.C. July 26, 1990)......................................................................................... 16

*In re Special Proceedings*, 842 F. Supp. 2d 232 (D.D.C. 2012)...................................................... 21

*Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268 (D.C. Cir. 1991) .............................. 22

*Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978). ...................................................................... 14

*Press-Enter. Co. v. Superior Court*, 464 U.S. 501 (1984)..................................................... 11, 22

*Press–Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) ................................................. 13, 14, 22

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).............................................. 10, 11

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) .................................................................................. 11

*Smith v. United States Dist. Court for S. Dist.*, 956 F.2d 647 (7th Cir. 1992).............................. 12

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989).............................................. 15

*Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477 (6th Cir. 2012)....... 13

*United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577 (S.D.N.Y.

    2009) ............................................................................................................................................ 15

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) ....................................................................... 12

*United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188 (9th Cir. 2011)

    ...................................................................................................................................................... 16

*United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997) ............................................... *passim*

*United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998) ................................................. 17, 18

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1981) ............................................. 22, 23, 24

*United States v. Kott*, 380 F. Supp. 2d 1122 (C.D. Cal. 2004) .................................................... 15

*United States v. Loughner*, 769 F. Supp. 2d 1188 (D. Ariz. 2011)............................................... 15

*Wash. Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897 (D.C. Cir. 1996) .......... 14

*Wash. Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) ................................................. 11, 13, 22

## STATUTES

18 U.S.C. § 3121 et seq. .................................................................................... 9

18 U.S.C. § 3123 ........................................................................................ 18, 21

18 U.S.C. § 793 ............................................................................................ 6, 8

18 U.S.C. § 2703 ...................................................................................... *passim*

## RULES

Fed. R. Cr. P. 4 ............................................................................................... 18

## OTHER AUTHORITIES

Ann E. Marimow, *A rare peak into a Justice Department leak probe*, Wash. Post (May 19,

    2013), available at https://perma.cc/X78B-ASNT ...................................... 6

Ann E. Marimow, *Judge Apologizes for Lack of Transparency in Leak Probe*, Wash. Post (May

    22, 2013), available at https://www.washingtonpost.com/world/national-security/judge-

    apologizes-for-lack-of-transparency-in-leak-case/2013/05/22/ad769370-c308-11e2-8c3b-

    0b5e9247e8ca_story.html ............................................................................ 5

Dana Milbank, *In AP, Rosen investigations, government makes criminals of reporters*, Wash.

    Post (May 21, 2013), available at https://perma.cc/YM7Y-JMKP .............................. 7

Michael Calderone & Ryan J. Reilly, *DOJ Targeting Of Fox News Reporter James Rosen Risks

    Criminalizing Journalism*, The Huffington Post (May 21, 2013), available at

    https://perma.cc/SM7N-Q74R ...................................................................... 6

Michael Isikoff, *DOJ confirms Holder OK'd search warrant for Fox News reporter's emails*,

    NBC News (May 23, 2013), available at https://perma.cc/HE8F-5NBD ...................... 6

Michael Isikoff, *Obama Cracks Down On Classified Leaks*, Newsweek (June 10, 2010),

    available at https://perma.cc/2RRV-B2G4 .......................................................... 5

N.Y. Times Editorial Board, *Another Chilling Leak Investigation*, N.Y. Times (May 21, 2013), available at http://nyti.ms/1mDdK3c ........................................................................................ 6

OIG, *A Review of the FBI's Use of Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act in 2007 through 2009 — Executive Summary* (June 2015), *available at* https://oig.justice.gov/reports/2015/o1506.pdf ........................................................ 7

Scott Shane, *U.S. Analyst is Indicted in Leak Case*, N.Y. Times (Aug. 27, 2010), available at http://nyti.ms/2avgDlp ........................................................................................................ 5

Scott Shane, *U.S. Pressing Its Crackdown Against Leaks*, N.Y. Times (June 17, 2011), available at http://nyti.ms/1BLoYH5 ........................................................................................................ 5

## PRELIMINARY STATEMENT

The Reporters Committee for Freedom of the Press ("Reporters Committee") seeks access to certain sealed court records, including dockets and docket entries, relating to the completed criminal investigation and prosecution of Stephen Jin-Woo Kim ("Kim"), Criminal No. 1:10-cr-00225-CKK (the "Kim Prosecution").  Specifically, the Reporters Committee seeks an order unsealing any and all applications and supporting documents, including affidavits, seeking any of the following, any court orders granting or denying any of the following, and any other court records related to the following, such as returns, motions to seal, miscellaneous dockets and docket entries:

- any search warrant, regardless of whether the warrant was issued or executed, and including warrants under the Stored Communications Act ("SCA"), *see* 18 U.S.C. § 2703, that relates to the Kim Prosecution (collectively, the "Search Warrant Materials");

- authorization for the use of any pen register or trap and trace device pursuant to 18 U.S.C. §§ 3121–3127, regardless of whether such authorization was granted or a pen register or trap and trace device was used, that relates to the Kim Prosecution (collectively, the "PR/TT Materials"); and

- any order pursuant to 18 U.S.C. § 2703(d) of the SCA, regardless of whether or not the order was issued or executed, that relates to the Kim Prosecution (collectively, the "Section 2703(d) Materials").

Court records of this type are routinely maintained under seal indefinitely and are generally not reflected on publicly available dockets.  Accordingly, the Reporters Committee

does not know the docket numbers associated with the Search Warrant Materials, PR/TT

Materials, and Section 2703(d) Materials it seeks to unseal.

The United States government's prosecution of Kim for allegedly revealing classified

national defense information to a member of the news media was and remains the subject of

intense public interest. Unsealing the Search Warrant Materials, PR/TT Materials, and Section

2703(d) Materials will shed light on the government's investigation and prosecution of Kim,

which has now concluded, and will also provide the public and the press with valuable insight

into the government's approach to investigations involving the disclosure of national defense

information to members of the news media more generally. In particular, unsealing of these

materials will inform the press and the public about the government's use of electronic

surveillance tools like pen registers and trap and trace devices in connection with such

investigations.

## FACTUAL BACKGROUND

**1.    The Kim Prosecution has been the subject of ongoing public interest.**

In February of 2014, Kim pled guilty in this Court to the unauthorized disclosure of

national defense information in violation of 18 U.S.C. § 793(d). In April of 2014, the Court

accepted Kim's guilty plea, sentenced him to thirteen months of imprisonment and twelve

months of supervised release, and ordered him to pay a $100 assessment. *See* Amended

Judgment, *United States v. Kim*, No. 1:10-cr-00225-CKK ("*Kim*") (D.D.C. Apr. 8, 2014), ECF

No. 291. Kim's indictment and subsequent guilty plea arose out of a government investigation

into the source of certain information that appeared in an article by journalist James Rosen

("Rosen") published by Fox News on its website on June 11, 2009 (the "Rosen Article"). The

government concluded that the Rosen Article included national defense information that had

been classified as "Top Secret/Special Compartmented Information." *See* Application for Search

Warrant, Exhibit 1 at 7, *Application for E-Mail Account [redacted] Maintained on Computer*

*Servers Operated by Google, Inc., Headquartered at 1600 Amphitheatre Parkway, Mountain*

*View, CA*, No. 1:10-mj-00291-AK (D.D.C. Nov. 7, 2011), ECF No. 20-1 (the "Rosen Gmail

Search Warrant Affidavit").

       The government's investigation and resulting prosecution of Kim were an immediate

subject of public interest.  Members of the news media not only covered the Kim Prosecution,

they also reported more broadly on the overall increase in the number of "leak" prosecutions by

the government under the Obama Administration. *See, e.g.*, Scott Shane, *U.S. Analyst is Indicted*

*in Leak Case*, N.Y. Times (Aug. 27, 2010), available at http://nyti.ms/2avgDlp; Michael Isikoff,

*Obama Cracks Down On Classified Leaks*, Newsweek (June 10, 2010), available at

https://perma.cc/2RRV-B2G4; Scott Shane, *U.S. Pressing Its Crackdown Against Leaks*, N.Y.

Times (June 17, 2011), available at http://nyti.ms/1BLoYH5.

       Public interest in the Kim Prosecution was heightened in May of 2013, when this Court

placed on its public docket three previously unsealed search warrants issued pursuant to the

Stored Communications Act[1] —two authorizing the search of two Yahoo! Email accounts used

by Kim (collectively, the "Kim Yahoo! Search Warrants") and one authorizing the search of a

Google Mail ("Gmail") account used by "a national news reporter" later revealed to be Rosen

(the "Rosen Gmail Search Warrant"). *See* Order, *Application for Search Warrant for Email*

---

[1] The Honorable Royce C. Lamberth, then chief judge of the district court, ordered the
documents to be unsealed in November of 2011, but they were not unsealed and placed on the
public docket until 18 months later, when *The Washington Post* inquired about them.  Judge
Lamberth attributed that delay to a series of administrative errors. *See* Ann E. Marimow, *Judge*
*Apologizes for Lack of Transparency in Leak Probe*, Wash. Post (May 22, 2013), available at
https://www.washingtonpost.com/world/national-security/judge-apologizes-for-lack-of-
transparency-in-leak-case/2013/05/22/ad769370-c308-11e2-8c3b-0b5e9247e8ca_story.html.

*Account [redacted] Maintained on Computer Servers Operated by Yahoo!, Inc. Headquartered at 701 First Avenue, Sunnyvale, CA*, No. 1:09-mj-00616-AK at Exhibit E (D.D.C. May 23, 2013), ECF No. 11 ("First May 2013 Unsealing Order"); Order, *Application for Search Warrant for Email Account [redacted] Maintained on Computer Servers Operated by Yahoo!, Inc. Headquartered at 701 First Avenue, Sunnyvale, CA*, No. 1:09-mj-00619-AK at Exhibit E (D.D.C. May 23, 2013), ECF No. 10 ("Second May 2013 Unsealing Order"); Order, *Application for E-Mail Account [redacted] Maintained on Computer Servers Operated by Google, Inc., Headquartered at 1600 Amphitheatre Parkway, Mountain View, CA*, No. 1:10-mj-00291-AK at Exhibit D (D.D.C. May 23, 2013), ECF No. 24 ("Third May 2013 Unsealing Order").  At the same time, the Court also unsealed and placed on its public docket the related applications, supporting affidavits and attachments thereto, and other "miscellaneous items" related to the three previously unsealed search warrants.  *See* First May 2013 Unsealing Order; Second May 2013 Unsealing Order; Third May 2013 Unsealing Order.

The unsealed materials showed not only that the government had obtained a search warrant to search Rosen's Gmail account, but also that, in applying for that search warrant, the government had asserted that probable cause existed to identify Rosen, a member of the news media, "as an aider and abettor and/or co-conspirator," who was himself suspected of having violated 18 U.S.C. § 793.  Rosen Gmail Search Warrant Affidavit at 3, 29.  In addition, the unsealed materials revealed publicly for the first time the scope of the Rosen Gmail Search Warrant, which covered not only communications between Rosen and Kim, but also *all* communications to and from Rosen's Gmail account on two specified dates, which the government stated would reveal "any other sources" for the Rosen Article.  *Id.* at 27–28.  Once made public, the Rosen Gmail Search Warrant garnered extensive media coverage and sparked

fierce public debate and discussion. *See, e.g.*, Ann E. Marimow, *A rare peak into a Justice*

*Department leak probe*, Wash. Post (May 19, 2013), available at https://perma.cc/X78B-ASNT;

Michael Isikoff, *DOJ confirms Holder OK'd search warrant for Fox News reporter's emails*,

NBC News (May 23, 2013), available at https://perma.cc/HE8F-5NBD; Michael Calderone &

Ryan J. Reilly, *DOJ Targeting Of Fox News Reporter James Rosen Risks Criminalizing*

*Journalism*, The Huffington Post (May 21, 2013), available at https://perma.cc/SM7N-Q74R;

N.Y. Times Editorial Board, *Another Chilling Leak Investigation*, N.Y. Times (May 21, 2013),

available at http://nyti.ms/1mDdK3c; Dana Milbank, *In AP, Rosen investigations, government*

*makes criminals of reporters*, Wash. Post (May 21, 2013), available at https://perma.cc/YM7Y-

JMKP.

> **2.    Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials Related to the Kim Prosecution Remain Under Seal.**

In addition to the Kim Yahoo! Search Warrants and Rosen Gmail Search Warrant,

documents filed with the Court in the Kim Prosecution indicate that the government obtained

other search warrants, orders authorizing the use of pen register and/or trap and trace devices,[2]

and orders pursuant to 18 U.S.C. § 2703(d)[3] in the course of its investigation of Kim.

---

[2] Pen registers and trap and trace devices are law enforcement surveillance tools the use of which is governed by 18 U.S.C. §§ 3121–3127 (the "Pen Register Act" or "PRA"). "Pen registers record telephone numbers, e-mail addresses, and other dialing, routing, addressing, or signaling information that is transmitted by instruments or facilities—such as telephones or computers— that carry wire or electronic communications." OIG, *A Review of the FBI's Use of Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act in 2007 through 2009 — Executive Summary* at 1 (June 2015), *available at* https://oig.justice.gov/reports/2015/o1506.pdf. "Trap and trace devices record similar information that is *received* by such instruments or facilities." *Id.* (emphasis added).

[3] Under 18 U.S.C. § 2703 of the Stored Communications Act ("SCA") a court may issue an order authorizing the government to require electronic communication service or remote computing service providers to disclose the contents of a subscriber or consumer's wire or electronic communications in electronic storage for more than 180 days and certain communications metadata related to a subscriber or customer. 18 U.S.C. § 2703(a), (b)(1), (c)(1)-(2).

Following Kim's indictment, the government and Kim engaged in discovery, and, on

October 11, 2011, the parties appeared at a status hearing and updated the Court with respect to

outstanding discovery issues.  Notice of Filing at 1, *Kim*, (filed Oct. 13, 2011), ECF No. 58.

After that status hearing, the government filed with the Court all of the discovery correspondence

between the parties as of the date of that filing, without attachments.  Among the correspondence

were two letters, dated October 15, 2010 and October 29, 2010, from the government to Kim's

counsel regarding the government's first and second production of unclassified discovery,

respectively.  *See id.* at Exhibits 2 and 3, ECF No. 58-2 and 58-3.  The letters listed the items the

government had produced to Kim's counsel, which included, among other things, Comcast

Internet subscriber records for Kim, subscriber and IP addresses for two Yahoo! email addresses

and one Gmail address, subscriber and/or call detail records for specified phone numbers,

Verizon IP address records for a specified IP address, emails recovered from two Yahoo! email

addresses and one Gmail address, "[p]en register and trap trace order results" for specified

telephone numbers, a Gmail address, and two Yahoo! email addresses, and "18 U.S.C. § 2703(d)

order results" for a Gmail address and one Yahoo! email address, among other items.  *Id.*

Other than the Kim Yahoo! Search Warrants and Rosen Gmail Search Warrant, the

Reporters Committee is not aware of any warrants, orders authorizing the use of pen registers

and/or trap and trace devices, or Section 2703(d) orders, or any applications or other materials

related thereto, connected to the Kim Prosecution that have been unsealed.[4]  The Reporters

Committee therefore requests that such court records—including the relevant dockets and docket

sheets—be unsealed, and that, to the extent necessary to facilitate such unsealing, the U.S.

---

[4] Each application for a search warrant, pen register or trap and trace device, or Section 2703(d)
order was likely assigned a unique docket number, but no listing of these docket numbers is
publicly available on the Court's website or otherwise.

Attorney be directed to provide a list of the specific docket numbers associated with the

applications and orders that are sought by this Application.

**ARGUMENT**

I.    **The press and the public have a powerful interest in access to the Search
      Warrant Materials, PR/TT Materials, and Section 2703(d) Materials still under
      seal that relate to the Kim Prosecution.**

Openness is "an indispensable attribute" of our judicial system. *Richmond Newspapers,*

*Inc. v. Virginia*, 448 U.S. 555, 569 (1980).  It guards against unfairness and inequity in the

application of laws, as "the sure knowledge that *anyone* is free to attend gives assurance that

established procedures are being followed and that deviations will become known." *Press-Enter.*

*Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*").  And, perhaps just as

importantly, "[i]n addition to ensuring actual fairness, the openness of judicial proceedings helps

ensure the appearance of fairness." *In re Application of N.Y. Times Co. for Access to Certain*

*Sealed Court Records*, 585 F. Supp. 2d. 83, 90 (D.D.C. 2008) ("*In re Application of N.Y.*

*Times*").  As the U.S. Supreme Court has explained, "[p]eople in an open society do not demand

infallibility from their institutions, but it is difficult for them to accept what they are prohibited

from observing." *Richmond Newspapers*, 448 U.S. at 572.

The U.S. Supreme Court has also recognized that the news media plays a vital role in

facilitating public monitoring of the judicial system.

> A responsible press has always been regarded the handmaiden of
> effective judicial administration, especially in the criminal
> field. . . .  The press does not simply publish information about
> trials but guards against the miscarriage of justice by subjecting the
> police, prosecutors, and judicial processes to extensive public
> scrutiny and criticism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).  Thus, "[w]hile media representatives enjoy the

same right of access as the public," they often "function[] as surrogates for the public" by, for

example, attending proceedings, reviewing court documents, and reporting on judicial matters to the public at large. *Richmond Newspapers*, 448 U.S. at 573.

For these reasons, it is well-settled that the public and the press have a right of access to court documents arising from the public's interest in observing the consideration and disposition of matters by federal courts. *See Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) ("*Robinson*") (explaining that the First Amendment right of access "serves an important function of monitoring prosecutorial or judicial misconduct"). This right extends to dockets as well, which, when sealed in their entirety, create a "two-tier system, open and closed," that erodes "[c]onfidence in the accuracy of [the court's] records" and "the authority of its rulings and respect due its judgments." *CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 765 F.2d 823, 826 (9th Cir. 1985) (granting a radio and television network access to documents filed under seal in a post-conviction criminal proceeding).

The public's right of access is especially strong in matters that concern actions taken by the executive branch. As the U.S. Court of Appeals for the Seventh Circuit has explained, "'in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.'" *Smith v. United States Dist. Court for S. Dist.*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)); *see also United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (stating the "courts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of circumstances," especially "when a judicial decision accedes to the requests of a coordinate branch"). Moreover, the press and the public have a particularly powerful interest in obtaining access to the specific court records that are the subject of this Application. The Reporters Committee seeks to unseal court records relating to judicial authorization for the

government's use of certain electronic surveillance tools—a judicial process that is too frequently shrouded in secrecy, even long after a case is no longer ongoing. And it seeks access to such records in connection with a closed investigation in which the government obtained, through a search warrant under the SCA, the email communications of a journalist without his knowledge. Public access to still sealed court records concerning additional search warrants, orders authorizing the use of pen registers and trap and trace devices, and Section 2703(d) orders in connection with the Kim Prosecution will provide the public and the press with much-needed insight into the government's use of electronic surveillance tools in investigations of reporter-source communications in general, and in connection with the Kim Prosecution, specifically.

II.     **The press and the public have both a constitutional and common law right to access the sealed Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.**

"The First Amendment guarantees the press and the public access to aspects of court proceedings, including documents." *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997); *see also Robinson*, 935 F.2d at 287. To determine whether the First Amendment right of access applies to a particular type of proceeding or document, courts must consider both "experience and logic," *i.e.* (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 9 (1986) ("*Press–Enterprise II*"); *In re Application of N.Y. Times*, 585 F. Supp. 2d at 87. If both of these questions are answered affirmatively, a constitutional requirement of access can be imposed. *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985). Several Circuits have recognized that this right extends to court dockets. *See, e.g., Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir. 2004) (holding that docket sheets in

9

civil and criminal proceedings "enjoy a presumption of openness and that the public and the

media possess a qualified First Amendment right to inspect them"); *Doe v. Pub. Citizen*, 749

F.3d 246, 268 (4th Cir. 2014) (holding that there is a First Amendment right of access to dockets

in civil proceedings); *Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477,

490 (6th Cir. 2012) ("The First Amendment access right extends to court dockets, records,

pleadings, and exhibits . . .").

      In addition, the common law also provides a right of access to judicial records and

documents. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978). The common law right

of access to judicial records is grounded in "'the public's interest in keeping a watchful eye on

the workings of public agencies.'" *El-Sayegh*, 131 F.3d at 161 (quoting *Wash. Legal Found. v.*

*United States Sentencing Comm'n*, 89 F.3d 897, 905 (D.C. Cir. 1996) (internal quotation

omitted)). Accordingly, this right of access applies to documents that play a role in the

"adjudicatory process" and is "largely controlled by the second of the First Amendment criteria,"

*El-Sayegh*, 131 F.3d at 161, that is "whether public access provides a significant positive role in

the functioning" of the proceedings. *Press-Enterprise II*, 478 U.S. at 8.

### A.   The First Amendment and common law rights of access apply to the Search Warrant Materials.

1. *The public has a First Amendment right of access to the Search Warrant Materials.*

      The First Amendment right of access applies to search warrant materials after the

government's investigation has concluded. *See In re Application of N.Y. Times*, 585 F. Supp. 2d

at 90; *In re Application of WP Co. LLC for Access to Certain Sealed Court Records*, No. 16-mc-

351 (BAH), 2016 WL 1604976 at *2 (D.D.C. April 1, 2016) ("*In re WP*"). In *In re Application*

*of N.Y. Times*, the court held that the First Amendment right of access applies to search warrants,

warrant applications, supporting affidavits, court orders, and returns post-investigation. 585 F.

Supp. 2d at 86, 90.  Applying the experience and logic test, the court found first that "post-investigation warrant materials . . . have historically been available to the public." *Id.* at 88.  The court noted that "warrant applications and receipts are routinely filed with the clerk of court without seal," and that there is "a common law tradition of access to warrant materials." *Id.* at 88, 89.  Second, the court found that logic favors access to post-investigation warrant materials, because access to these materials "plays a significant positive rule in the functioning of the process." *Id.* at 89.  In this regard, the court found, *inter alia*, that "[p]ublic access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Id.* at 90.

 Courts in other circuits have likewise held that there is a First Amendment right of access to search warrant materials after the conclusion of the government's investigation.  *See United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011); *United States v. Kott*, 380 F. Supp. 2d 1122, 1124-25 (C.D. Cal. 2004), *aff'd on other grounds*, 135 Fed. Appx. 69 (9th Cir. 2005); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("*In re Gunn*") (finding a First Amendment right of access to warrant materials even while investigation is still ongoing).  Those courts that have rejected a claim of access under the First Amendment to search warrant materials have done so in cases in which the government's investigation was still ongoing, and have often expressly reserved the question of whether the First Amendment right of access would apply after the investigation ends.  *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) ("*All Funds on Deposit*").

Based on this precedent and application of the experience and logic test, the First

Amendment right of access applies to the Search Warrant Materials at issue here.  The

government has concluded its investigation into the disclosure of classified information that

appeared in the Rosen Article, as Kim pled guilty in connection with that disclosure in 2014.  As

the court in *In re Application of N.Y. Times* recognized, such post-investigation search warrant

materials "have historically been available to the public."  585 F. Supp. 2d at 88.  In addition,

public access to the Search Warrant Materials will play "a significant positive rule in the

functioning of the process," *id.* at 89; it will "serve[] as a check on the judiciary," *id.* at 90, as

well as a potential "curb on prosecutorial . . . misconduct," *In re Gunn*, 855 F.2d at 573.

Accordingly, the public has a First Amendment right of access to the Search Warrant Materials.

      2.   *The public has a common law right of access to the Search Warrant Materials.*

In addition, the public has a common law right of access to the Search Warrant Materials

at issue here.  Post-investigation search warrants, warrant applications, supporting affidavits,

court orders, and returns are judicial records to which the common law right of access applies.

*See In re Application of N.Y. Times*, 585 F. Supp. 2d at 92; *see also In re Search Warrants Issued*

*on May 21, 1987*, Misc. No. 87-186 (JHG), 1990 WL 113874 at *3 (D.D.C. July 26, 1990)

(finding a common law right of access attaches to affidavits in support of search warrants, post-

investigation).  Indeed, while the D.C. Circuit has not expressly addressed this issue, other

federal courts of appeals have almost uniformly found that search warrant materials in closed

investigations are judicial records to which the common law right of access applies.  *See In re*

*Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012) (stating that "the common law right of

access to judicial documents may in some situations permit access to search warrant

proceedings," including documents); *United States v. Business of Custer Battlefield Museum and*

*Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (finding that the common law right of access applies to search warrant applications and their supporting affidavits after the government's criminal investigation ended); *In re EyeCare Physicians of America*, 100 F.3d 514, 517 (7th Cir. 1996) (holding that the common law right of access applies to a search warrant affidavit); *In re Newsday, Inc.,* 895 F.2d 74, 79 (2d Cir. 1990) (finding that a search warrant application is "a public document subject to a common law right of access" at the post-investigation stage); *Baltimore Sun Co.*, 886 F.2d at 64 (finding that "affidavits for search warrants are judicial records").

### B. The First Amendment and common law rights of access apply to the Section 2703(d) and PR/TT Materials.

1. *The public has a First Amendment right of access to the Section 2703(d) and PR/TT Materials.*

The Section 2703(d) Materials and PR/TT Materials are analogous to search warrant materials from closed investigations, which, as discussed above, this Court has previously held are subject to the First Amendment right of access. *See In re Application of N.Y. Times,* 585 F. Supp. 2d at 90. Accordingly, applying the experience and logic test, as well as the court's reasoning in *In re Application of N.Y. Times*, it is clear that the First Amendment right of access applies to both the Section 2703(d) Materials and PR/TT Materials at issue here.

First, the tradition of public access to post-investigation search warrant materials recognized in *In re Application of N.Y. Times* likewise applies to the Section 2703(d) Materials and PR/TT Materials. *See El-Sayegh*, 131 F.3d at 161 (stating that "[a] new procedure that substituted for an older one would presumably be evaluated by the tradition of access to the older procedure"); *see also United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998) (noting that the experience prong may be satisfied by establishing a history of access to information

"reasonably analogous" to the information sought). As the court in *In re Application of N.Y. Times* recognized, "post-investigation warrant materials . . . have historically been available to the public," as shown by the "routine historical practice" of filing warrant applications and receipts with the clerk of court without seal. 585 F. Supp. 2d at 88. Moreover, the historic common law right of access to warrant materials, which is "an appropriate consideration to take into account when examining the scope of First Amendment," also weighs "strongly in favor of a First Amendment qualified right of access to warrant materials." *Id.* at 89. The Section 2703(d) and PR/TT Materials, which are functional equivalents to search warrants, must be evaluated by this same historic tradition of access. *See El-Sayegh*, 131 F.3d at 161; *Gonzales*, 150 F.3d at 1256.

Second, just as with post-investigation search warrants, logic strongly supports a First Amendment right of access to the Section 2703(d) and PR/TT Materials at issue here. *See In re Application of N.Y. Times*, 585 F. Supp. 2d at 90 ("Specifically, with respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system, at least in the post-investigation stage."). As the court in *In re Application of N.Y. Times* explained, public access to warrant materials, among other things "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Id.* Indeed, because Section 2703(d) orders and orders authorizing the use of PR/TT devices function like warrants, but may be obtained on a showing *lower* than the probable cause standard that must be satisfied to obtain a search warrant under Federal Rule of Criminal Procedure 4, *see* 18 U.S.C. § 2703(d) and 18 U.S.C. § 3123(a)(1), access to such materials arguably plays an even *more* "significant positive role in the functioning of the criminal justice

system." *In re Application of N.Y. Times Co.,* 585 F. Supp. 2d at 90.[5]  Access to the Section 2703(d) and PR/TT Materials at issue here will allow the public to scrutinize the arguments the government put forth in support of their applications for Section 2703(d) orders and orders authorizing the use of PR/TT devices in connection with its investigation of Kim, as well as the basis for any court order granting or denying such applications.  Thus, such access will allow the public to serve as a check on prosecutors and ensure that judges are not "serving as a rubber stamp" for the issuance of such orders.  *In re Application of N.Y. Times*, 585 F. Supp. 2d at 90; *see also In re Gunn*, 855 F.2d at 573.

　　　To date, no federal court of appeals has squarely addressed the question of whether the First Amendment right of access applies to Section 2703(d) orders in the context of a closed investigation.  The only court of appeal to address access to Section 2703(d) orders, the Fourth Circuit, did so in the context of an ongoing criminal investigation and concluded that the First Amendment right of access did not apply in that context.  *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 292 (4th Cir. 2013) ("*In re United States*").  In that case, petitioners sought access to Section 2703(d) orders and related documents at the pre-grand jury phase.  *Id.* at 286.  The Fourth Circuit found that, at that early phase in the proceedings, "secrecy is necessary for the proper functioning of the criminal investigations," and that "openness will frustrate the government's operations."  *Id.* at 292.  In

---

[5]  Orders authorizing the installation and use of PR/TT devices may be obtained *ex parte* by the government on a certification that "the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation."  18 U.S.C. § 3123(a)(1).  A Section 2703(d) order may be issued "if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).

contrast, here, there is no ongoing investigation in this case; Kim was indicted, he pled guilty, and he was sentenced. Accordingly, *In re United States*, is inapposite.

2. *The public has a common law right of access to the Section 2703(d) and PR/TT Materials.*

In addition to the First Amendment right of access, the Section 2703(d) and PR/TT Materials are also subject to the common law right of access. As with search warrants and related orders, Section 2703(d) orders and orders authorizing the use of PR/TT devices, as well as any subsequent, related court orders, are judicial records. *EEOC*, 98 F.3d at 1409; *In re United States*, 707 F.3d at 290 ("[I]t is commonsensical that judicially authored or created documents are judicial records."). Keeping with this principle, courts have held that the common law right of access attaches to both Section 2703(d) orders and orders authorizing the use of PR/TT devices. *See In re United States*, 707 F.3d at 290–91 (stating that "we have no difficulty holding that the actual § 2703(d) orders and subsequent orders issued by the court are judicial records"); *In re Sealing & Non-Disclosure of PR/TT/2703(D) Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008) ("*In re Sealing*") (writing that "opinions, orders, judgments, docket sheets, and other information related to the court's public functions" are in the "top drawer of judicial records" that are "hardly ever closed to the public"). Accordingly, the Section 2703(d) orders, orders authorizing the use of PR/TT devices, and any subsequent, related court orders issued in this case are judicial records subject to a strong presumption of access under the common law.

Additionally, just as applications and supporting affidavits for search warrants are judicial records, *see, e.g., In re Application of N.Y. Times*, 585 F. Supp. 2d at 92, applications and supporting affidavits for Section 2703(d) orders and orders authorizing the use of PR/TT devices are likewise judicial records because of the important role they play in the adjudicatory process. *See El-Sayegh*, 131 F.3d at 163. Section 2703(d) provides that the court shall issue a Section

2703(d) order "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe" the communications content or communications metadata "are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Thus, the applications and supporting affidavits are the basis for the court's determination as to whether the government has met the statutory standard for issuance of a Section 2703(d) order, which is "essentially a reasonable suspicion standard." *In re United States*, 707 F.3d at 287. Likewise, before a court is required to enter an order authorizing the installation and use of a pen register or trap and trace device, it must conclude that "the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1). The application thus plays a decisive role in the court's determination as to whether use of a PR/TT should be authorized.

Finally, other motions related to Section 2703(d) orders and PR/TT orders also play a key role in the adjudicatory process and therefore are judicial records. *See El-Sayegh*, 131 F.3d at 163. Such derivative motions are filed with the objective of obtaining judicial action or relief, and the court relies upon such filings in granting or denying the relief sought. Consistent with this reasoning, the Fourth Circuit has held that derivative Section 2703(d) motions are judicial records because they play a role in the adjudicative process; namely, "they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders." *In re United States*, 707 F.3d at 291. For these reasons, any derivative Section 2703(d) and PR/TT motions are judicial records to which the common law right of access applies.

**III.    The Government cannot meet its burden to overcome the presumption of access to the Search Warrant Materials, the PR/TT Materials, and the Section 2703(d) Materials.**

**A. The government cannot demonstrate a compelling interest that justifies the continued sealing of the Search Warrant Materials, the PR/TT Materials, and the Section 2703(d) Materials.**

Although the First Amendment right of access "is not absolute, the standard to overcome the presumption of openness is a demanding one." *In re Special Proceedings*, 842 F. Supp. 2d 232, 239 (D.D.C. 2012). A document to which the First Amendment right of access applies may remain under seal only if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press–Enterprise II*, 478 U.S. at 13–14 (quoting *Press–Enterprise I*, 464 US. at 510). Thus, the presumption of public access may be "overridden only if the government demonstrates that '(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.'" *In re WP*, 2016 WL 1604976 at *2 (quoting *Robinson*, 935 F.2d at 290) (internal quotation marks omitted)).

Because the government's investigation of Kim has concluded, there is no compelling interest in the continued sealing of the Search Warrant, Section 2703(d), and PR/TT Materials in their entirety. Indeed, in light of Kim's guilty plea, there can be no law enforcement interest implicated by public disclosure of the Search Warrant, Section 2703(d), and PR/TT Materials. *See In re WP*, 2016 WL 1604976 at *2. Moreover, to the extent that the government could identify some compelling interest that justified sealing some portion of the Search Warrant, Section 2703(d), or PR/TT Materials, redaction—not wholesale sealing—would be warranted. *See In re Application of N.Y. Times*, 585 F. Supp. 2d at 91.

**B. The government cannot overcome the presumption in favor of disclosure of the Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials at issue here under the common law.**

In determining whether a judicial record should be unsealed under the common law right of access, "the starting point . . . is a 'strong presumption in favor of public access.'" *EEOC*, 98 F.3d at 1409 (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)); *see also United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1981) (acknowledging the "important presumption in favor of public access to all facets of criminal court proceedings"). Under the *Hubbard* test applicable in this Circuit, courts evaluating whether the common law right of access applies should consider: (1) the need for public access to the documents at issue; (2) the public use of the documents; (3) the fact of objection and the identity of those objecting to disclosure; (4) the strength of the generalized property and privacy interests asserted; (5) the possibility of prejudice; and (6) the purposes for which the documents were introduced.[6] *Hubbard*, 650 F.2d at 317–22. Here, the *Hubbard* factors weigh in favor of disclosure of the Search Warrant, Section 2703(d), and PR/TT Materials.

First, the public interest in access to the Search Warrant, Section 2703(d), and PR/TT Materials is strong. The Kim Prosecution and underlying investigation—and, in particular, the revelation that the government named Rosen an "aider, abettor, and/or co-conspirator," and targeted his email account for search—were the subject of considerable public attention. And the public has "a legitimate interest in observing and understanding how and why" the Kim "investigation progressed in the way that it did," *In re Application of N.Y. Times*, 585 F. Supp. 2d at 93, including specifically how the government obtained and used search warrants, Section 2703(d) orders, and pen registers and trap and trace devices in its investigation.

---

[6] The *In re Application of N.Y. Times* Court limited the sixth *Hubbard* factor to the facts of that case and found it inapplicable to the determination of whether search warrant materials should be unsealed. 585 F. Supp. 2d at 92 n.13. Accordingly, this factor is irrelevant in determining whether the Search Warrant, Section 2703(d), and PR/TT Materials here should be unsealed.

The second *Hubbard* factor focuses on "the extent to which information sought was already in the public forum." *In re Application of N.Y. Times*, 585 F. Supp. 2d at 93 (citing *Hubbard*, 650 F.2d at 318). The public knows that Kim and Rosen were targets of search warrants, Section 2703(d) orders, and PR/TT orders, and Kim pled guilty to a criminal charge in connection with the case. As a result, although the judicial records relating to the use of those investigatory tools are sealed, their underlying subject matter is already public, weighing in favor of disclosure.

As to the third and fourth *Hubbard* factors, no one has yet objected to the disclosure of the Search Warrant, Section 2703(d), or PR/TT Materials or asserted any privacy interests. To the extent such privacy interests may be asserted in the future, there is no indication that the materials sought here contain any specific, intimate personal details, and a generalized privacy interest, without more, is insufficient to prevent disclosure. *In re Application of N.Y. Times*, 585 F. Supp. 2d at 93 (holding that statement that individual "wants 'to get on with his life,'" without more specific information, is not a "legally cognizable privacy interest"); *Hubbard*, 650 F.2d at 324 (stating that valid privacy interests arise in "intimate details of individual lives, sexual or otherwise").

Finally, because Kim pled guilty in 2014, thereby ending the government's investigation, there is no possibility of prejudice from unsealing the Search Warrant, Section 2703(d), or PR/TT Materials. Accordingly, the fifth *Hubbard* factor also favors disclosure.

Applying these factors, the court in *In re Application of New York Times* concluded that the public's common law right of access to search warrant materials had not been overcome. This Court found that the public had a "legitimate interest in observing and understanding how and why the investigation" at issue in that case "progressed in the way that it did." *In re*

*Application of N.Y. Times*, 585 F. Supp. 2d at 92–93. And, even though a target of the government investigation objected to public disclosure of the records sought in that case on privacy grounds, the court found that objection insufficient, noting that the government did "not provide any specifics" regarding the privacy interest purportedly at stake, "other than to state that [the target] wanted[ed] 'to get on with his life.'" *Id.* at 93. In addition, the government conceded that there was no possibility of prejudice from release of the documents. *Id.* Accordingly, the court concluded that if it were to analyze the case under the common law standard, the materials could not remain under seal because "[t]he public has made a strong showing of need for the materials, much of the information is already in the public forum, [] there is no possibility of prejudice to an investigation or a future defendant," and the government made only a "generalized assertion" of a privacy right. *Id.* The same analysis applies here.

Because the *Hubbard* factors weigh in favor of disclosure and no factors weighs against disclosure, the Court should grant the Reporters Committee's motion to unseal the Search Warrant, Section 2703(d), and PR/TT Materials pursuant to the common law right of access.

## CONCLUSION

The press and public have both a common law and First Amendment right of access to the Search Warrant, Section 2703(d), and PR/TT Materials related to the government's completed investigation and prosecution of Kim. There is no compelling interest justifying the continued sealing of these materials in their entirety. Particularly in light of the powerful public interest in access here, the Reporters Committee respectfully requests that the Court enter an order unsealing the Search Warrant, Section 2703(d), and PR/TT Materials at issue.

Dated:  October 21, 2016

Respectfully submitted,

*s/ Katie Townsend*
Katie Townsend
D.C. Bar No. 1026115
Bruce D. Brown
D.C. Bar No. 457317
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
bbrown@rcfp.org
ktownsend@rcfp.org